Pkaesok, C. J.
 

 If we correctly apprehend the opinion of his Honor, it is in substance, this : where a debtor files a schedule and an issue of fraud or concealment, in respect to one item, or subject matter set out, is found against him, and he, thereupon, files an amended schedule, the creditor in his suggestion of fraud or1 concealment, for the purpose of another issue, is confined to the amended schedule, and is not at liberty to take exceptions to any item or subject matter, set out in the original schedule, other than that in respect to which the fraud or concealment was found.
 

 We concur in the opinion ; and believe this to be the proper construction of the statute ; for if the creditor is at liberty to take the original schedule by piece meal, and make up issues of fraud upon one item after another, the debtor might be subjected to a longer imprisonment than the statute seems to contemplate ; and to avoid this consequence, all exception must be considered as waived except as to the items or subjects in regard to which issues are made up at the outset. This is in strict analogy to the rule, that upon a
 
 sci. fa.
 
 to revive a dormant judgment, no cause can be shown, which would have been a matter of defense to the original action, and u¡.)on a
 
 sei. fa.
 
 suggesting a further breach on the conditions of a bond, upon
 
 *148
 
 which judgment has been rendered, no matter can be suggested, in respect to which, a breach could have been assigned in the original proceeding ; the principle, in all such cases, being, that
 
 “
 
 good matter must be taken advantage of in apt time,” and an omission to do so, is considered as a waiver, to prevent protracted litigation.
 

 But although we agree with his Honor as to the construction of the statute, we differ with him as to its application to the case now under consideration. Here, too, owing to the very succinct manner in which the statement of the case is made, and to the voluminous documents sent as explanatory thereof, this Court has had great difficulty, and been subjected to much trouble in finding out the point which the case intended to present.
 

 The jury find fraud and concealment in respect to two notes of considerable amount, called in the verdict the u Georgia notes,” upon John M. Cocheram and Thomas Boyington— one for $2,343, due on the 1st January, 1858, with interest from the 1st of October,
 
 1856;
 
 the other for $2,017,40, due on the 1st of January, 1859, with interest from 1st of October, 1856.
 

 The
 
 original schedule
 
 states that these two notes, with other notes, and certain articles of personal property, had been conveyed, by deed, dated 16th of August, 1857, to Wyatt Austin in trust, to secure, among others, a debt due to one A. Goss, for $3,500, to which said Austin is surety, drawn in July, 1855; that Austin sold the note for $2,343, to one Fesperman, and the note for $2,017,40 to one Houston, and agreed to satisfy the debt of $3,500 due to Goss, and account for the balance of the trust fund; but, in fact, Austin had not paid the debt due to Goss, and Redwine himself had made large payments thereon, and
 
 “
 
 took up the old note” by giving his note for the balance, viz., $800 or $900, and thereupon the schedule sets out “
 
 a claim
 
 against Wyatt Austin for the surplus in his hands, after satisfying the trust.”
 

 The amended schedule
 
 gives an entire different version of this transaction ; for it discloses this fact, “ although the deed
 
 *149
 
 in trust (to Austin) represents tire debt, due to Goss, to be $3,500, yet, in fact, the said Redwine owed the said Goss no such amount, but only about $272.” It further sets out that Austin sold the twenty-three-hundred-and-forty-three dollar note to Eesperman, at an under value, but does not state what he received therefor, and that he sold the twenty hundred and seventeen dollar note to Houston for $700, cash, $500 in notes, and $630 in a note, due from Redwine to Dewing, Thayer & Co., and that Redwine, being dissatisfied with his management of the fund, called upon him for an account, and he promised to make certain payments upon the judgments, which had been obtained against Redwine, but
 
 “
 
 about the middle of April, 1857, said Austin absconded from the county, without ever accounting to him for any of the effects conveyed, &c.”
 

 That this is not a full and fair disclosure, is almost so apparent upon its face, as to have justified the Court in so ruling, without submitting issues to the jury; but, most certainly, the creditors ought to have been permitted to test its truth and fairness, by the issues which were tendered in respect to it, and which, as it seems to us, were not “ outside and irrespective” of the allegation of fraud before made, but, were directly relevant and tended to show that the new schedule was not a full and fair disclosure, in this: that it did not show what had become of the large amount paid by Redwine to Goss on the feigned debt, or of the funds received from Fes-perman, or of the $700 cash, and $500 in notes, received of Houston, except by the naked averment of Redwine, that Austin had “ absconded without accounting with him for any part thereof;” and surely, after the admission, that the debt of $3,500 to Goss was feigned, except as to a small amount, and inserted in the deed of trust by covin between Redwine and Austin, with an intent to enable Redwine to defraud his creditors, they ‘ought not to have been required to take his statement that Austin had paid over to him no part of the fund, as true, and should have been allowed to tender any issue or issues calculated to eviscerate the truth, and if the facts warrant it, to frame an issue, so as to raise the question,
 
 *150
 
 whether a debtor, who had wilfully and fraudulently, put his effects in the hands of an accomplice, with an intent that he should abscond and take them beyond the reach of the law, with the further intent, afterwards, to join him and share in the spoils, has not excluded himself from the benefit of the laws passed for the relief of insolvent debtors. Why require a full and fair disclosure, if the property cannot be restored and put within the reach of the law ? Under this state of facts, how can the debtor take the oath which the act prescribes ? There is error.
 

 Pbk Cubiam, Judgment reversed.